The narrow issue before this court today is whether or not Ms. Artis suffered from a severe impairment before her date last insured for Title II purposes of December 31, 1995. The ALJ in this matter mistakenly determined that there was no severe impairment before that date. In doing so, the ALJ inaccurately described the state of the medical evidence. In the ALJ's decision, page 3 of that decision, which appears at page 17 of the excerpts from the clerk's record, from the administrator's record, the ALJ stated that Ms. Artis only suffers from impairments as a result of residuals from an unfortunate automobile accident in October of 1996. The ALJ later on that same page stated that the medical expert testified that actually there were no medical impairments or any objective evidence of any medically determinable impairment before that date. And unfortunately, that's just not what the evidence supports. In fact, the medical expert did testify that Ms. Artis suffered from bilateral carpal tunnel syndrome as documented by an objective testing which occurred in September of 1994. But was there any evidence that it actually interfered with your work? Yes. The medical expert did testify to that. At that time? Ms. Artis appeared at the hearing and testified to having difficulties in gripping and holding items. The medical expert later on in her testimony stated that the descriptions of Ms. Artis of her difficulties in holding objects are as consistent with the objective medical evidence. Specifically, the medical expert stated, after summarizing the medical evidence related to the bilateral carpal tunnel syndrome, would say, the carpal tunnel, I'm not certain if that's occupational or not, but she has a medium nerve neuropathy as documented in both wrists, which would explain the decreased sensation, which would explain the problem with her wrist and hands, which she had testified to. Now, her past relevant work, which the judge didn't reach because he terminated the analysis at step two, was the type of occupation that requires frequent if not constant use of the hands. She was a cashier. She was a house cleaner. She was also, if I remember correctly, a stalker and receiver, along with being a cashier. She was an assembler. She was assembling medical parts. And so, by terminating the analysis at step two, Dale J. never developed a record as to how, and he didn't even ask Ms. Artis, as to the only pertinent question, did your hands bother you before December 31st, 1995? And reading Dr. Grant, Anderson, who was a medical expert at the hearing's testimony, Dale J. seemed to really fixate on this automobile accident of October 1996, when the regulations required him to fixate on the only pertinent dates, December 31st, 1995 and before. And the judge specifically asked Dr. Anderson, the medical expert, what impairments exist as of January 1st, 1996 and subsequent. Now, Dr. Anderson had already testified that Ms. Artis' bilateral carpal tunnel syndrome had been documented by objective testing in September of 1994. And then went on to somewhat convict herself by saying that there didn't appear to be any chronic illnesses after January 1st, 1996. But that still doesn't answer the pertinent question in which, if you'll allow me to sort of present a hypothetical. If Ms. Anderson started to suffer, let's assume, from bilateral carpal tunnel syndrome in September of 1994, and then suffered from that impairment, which was severe, and infected negatively on her ability to do her pastoral home work or any other work, for 13 or 14 months, and it got better in November of 1995, then Dr. Anderson's question, or answer to the question, what was there after January 1st, 1996, would be correct. Nothing. But that still doesn't answer the question of, was there a severe impairment before December 31st, 1995. We just don't know that. Well, didn't Dr. Anderson say that before the accident, he could find no impairments that caused limitations prior? No. She didn't say that. She said, if you will, Your Honor, she testified that, at the beginning of her testimony, which appears at page 9 of the original transcript, it's at 39 in the excerpt of the testimony, the examination begins, Doctor, yes, Your Honor, in the records there are several medical conditions. Yes, Your Honor, the claimant is suffering from bilateral carpal tunnel syndrome documented in Exhibit 18F28. That exhibit is dated September 1994. She also, in the next page, after she summarizes some of the severe impairments relating to her neck and back problems, she states at the bottom of the next page, the carpal tunnel would explain the decreased sensation and would explain the problems with her wrists and hands. Well, counsel, I guess my problem is I know a lot of people with carpal tunnel syndrome. Correct. But it doesn't mean that they can't do any work. Of course, but it doesn't mean they can't. But that's the problem with the case, Your Honor. We have a judge who's fixated on the October 1996 automobile accident. We have a judge who stated that. Well, what evidence is there that she can't work prior to that? She testified and Dr. Grant Anderson agreed that the problem she has with her hands. Everybody, I grant you she had a problem with her hands, but that doesn't necessarily mean that she's unemployable. She has to have some evidence that that is so severe that she can't work. Your Honor, unfortunately, is completing the sequential disability analysis on behalf of the ALJ. At step 2, all Ms. Anderson has to show is that, at a minimum, she has an impairment that affects her ability to do work activity more than minimally and that is based on objective evidence. It's not until we get to step 3, which we didn't do in this case, or step 4, which is the past relevant work analysis, or step 5, the identify alternative work with the burden on the commissioner with that, that we start to ask how does that severe impairment affect your ability to work. Now, you're asking me how does her impairment affect her ability to work, but that's a question the ALJ never asked in this case. He even had a V.E. there. All he asked of the V.E., the vocational expert, was what is her past relevant work. Thank you very much. The hearing is over. He didn't ask, well, I want you to assume that this person suffers from an occasional or frequent inability to use their hands because of carpal tunnel syndrome or any other hypothetical question and then say, can they do the past relevant work? Are there any other jobs? The ALJ didn't do that. And while Your Honor's frustration may be, well, how do I know that her impairments are really disabling? It may be a valid frustration, but it's not a question that has been developed in this record. The analysis was terminated at step 2. The question of disabled or not disabled isn't answered at step 2, Your Honor. The only question that is answered at step 2 is whether or not there is a severe impairment. It's not whether or not that severe impairment is disabling. But it has to have an effect on her ability to work, correct? Correct. So it has to be more than a minimal effect. Right. I thought that's what the medical evidence would show and that's what the ALJ decided. You say he fixated, but the ALJ decided there really wasn't anything of significance. What the ALJ said was all her problems were related to her October 1996 automobile accident. The ALJ did not say that. The ALJ says lots of things. Okay. He talks about the September 6th revealing carpal tunnel syndrome. The ALJ obviously knows that she had carpal tunnel syndrome. I'll quote from the ALJ's decision, Your Honor. Don't quote me a sentence from it. Do you want to read the whole thing to me in a minute and 33 seconds? Your Honor, he specifically says that Dr. Anderson, the medical expert, testified that all the problems result from October 1996. Yes. Dr. Anderson testified to that. No, he said all of her disabling impairments. That's not the same thing as saying all of her problems. I've got lots of problems. Okay. But they're not necessarily, well, depending on who you talk to, they're not necessarily disabling impairments. Yes, Your Honor. But Dr. Anderson testified and said she had carpal tunnel before December 31st, 1995. The way she describes her carpal tunnel is consistent with the objective evidence. She described her carpal tunnel as not allowing her to hold things, that she would drop things. Okay. That's the point, Your Honor. I understand. You may. You have a minute for rebuttal. Thank you. You may proceed. Your Honor, my name is Jean M. Turk. I'm here for the Commissioner of Social Security, Joanne Barnhart. I'm also here to support the ALJ's decision that the claimant had not met her burden of proof to show that she had a severe impairment prior to her date last insured. Title Step 2 cases, I know, are very difficult to defend, and the Court has looked at them and given them sort of a de minimis standard. However, I prefer, they've also been referred to as the gatekeeping statute, and that's how I prefer to look at this because I feel that it directs the analysis towards the evidence. And here, the claimant had the burden of showing that she had an impairment, the severity of that impairment, and the duration. The plaintiff has not met that burden. As a gatekeeping statute, you don't sit on the fence. You're either through the gate or you're on the other side of the gate. And the way you get through is by proving the evidence. And here, I don't believe that the ALJ or the plaintiff or the ME disputed the fact that the claimant has an impairment. We have the September 94 nerve conduction studies. We have the, I think it was, again, September 95 CT scan of her back showing a bulging disc. And the ME did review that evidence. So I don't think that that particular part of the regulation is what's at issue. It's really the severity and the duration. And how do we determine the severity? We look at the medical evidence. We look at the medical treatment. We look at the claimant's testimony. And in terms of the medical evidence, all we have are those two reports from 94 and 95. There is no follow-up treatment for either of those conditions prior to the claimant's date last insured. And, in fact, there is no follow-up treatment from January of 96 to approximately the end of October of 96. So in terms of looking at the medical reports, zip. In terms of looking at the treatment, nothing. Let's talk about the plaintiff's testimony then. In August of 94, the claimant said the problem with her hands was they go numb while sleeping. That's it. There's no other complaint from her about limitations. And, in fact, in her initial application, there is no mention of problems with her hands or wrists. In her redetermination application, there is no mention of her hands or wrists. In her request for hearing, there is no mention of problems with her hands and wrists. Where we get her problems with her hands and wrists is in the testimony at the hearing. And I do believe that that is what the ME was talking about, that those particular February 92 or February 99 limitations are consistent with carpal tunnel syndrome. But prior to that time, there was no complaint by the plaintiff about problems with her hands and wrists, her bulging disc. Again, we have that. She said she had 20 years of back problems. She had a flare-up. She goes to the doctor. The doctor tells her bulging disc. No follow-up treatment. No follow-up treatment prior to date last insured. No continual problems from January of 96 through October of 96. Again, the first time we really hear of a follow-up on her back is a report from late October. I think it was October 26 of 96, about a week or so after that car accident. She applied for benefits when? Her application was September of 97. Then we look at the duration. Again, she may have had some problems with her hands. Maybe they were going numb when she was sleeping. She may have had a flare-up of her back pain. But there is no duration to show that this impairment lasted after her date last insured. There is that requirement of some continuous. Again, I don't believe that Emmy's testimony was inconsistent. I believe that he was referring to her present limitations or complaints. If he was referring to the symptom of August of 94, when her hands went numb while sleeping, I do not believe that that is a significant impact on her ability to work at that time. How do you respond to the counsel's argument that it should be remanded to at least go through Steps 3 through 5? No, Your Honor. This is a gatekeeping statute, and she has not gotten through the gate. She has not gotten through Step 2. Exactly. Again, disability benefits are for people who are severely disabled, and I don't believe that plaintiff has carried her burden of proof through Step 2. And it is her burden to carry. It is a gatekeeping statute, and I think we need to hold that. What is the strongest authority? They're just showing an impairment. I'm sorry, Your Honor? What is the strongest authority that you have in our circuit for your position that we should sustain this as a gatekeeping function and uphold a dismissal at Stage 2? Or does the case not come to mind? Yes, the case of Flatton comes to mind. Megalaze, Andrews, all supporting that. And also the regulation itself, Your Honor. It is a multifaceted regulation, and I believe that the regulation speaks for itself. Okay. Are there any more questions? Matthews v. Shalala. Flatton v. Secretary of Health and Human Services might help you. Thank you, Your Honor. Okay. Any further questions? Please. No, there don't appear to be any. Thank you, Counsel. Thank you very much for your time. With my time remaining, I'd simply like to point out that what the Commissioner doesn't point out to this Court was whose burden it was to ask how long her hands had bothered her, whether her hands had bothered her from September 94 and continued to be sensitive. Counsel, what about the fact there was never any follow-up treatment of any kind? Well, that is an issue, Your Honor. And unfortunately, this record doesn't have any follow-up treatment. Isn't that your burden? Correct. But I think I've satisfied that burden. She's testified to having hand problems. A medical expert has said that those hand problems are consistent with the objective medical evidence. And the way she describes her hand problems, she's not able to hold things. That's a significant impairment. Thank you, Your Honor. Thank you. The case just argued is submitted for decision. We'll hear the next case capitalized.
judges: Schroeder, Dw Nelson, Fernandez